

**SIGNED this 04th day of January, 2007.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE<br><br>JAMES G. DIAZ & KIMBERLY E. DIAZ<br><br>*DEBTORS* | BANKR. CASE NO.<br><br>06-31070<br><br>CHAPTER 13 |

### DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION

CAME ON for hearing the foregoing matter. The trustee objected to confirmation, arguing that the plan does not provide for set payments to secured creditors as required by section 1325(a)(5)(B)(iii)(I) of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").

The plan in this case was a "stair step" plan, in which distributions to certain secured creditors (including creditors with claims secured by cars) would be increased once debt owed to a rent-to-own creditor and a pension plan debt were repaid. The plan would have caused little or no notice under pre-BAPCPA practice, as such plans were typically "pro rata" plans, *i.e.*, the plan payment was divvied up among secured creditors in accord with the relative size of each such

creditor's claim. As various creditor interests were paid off, the distribution to the remaining secured (and administrative) creditors would be adjusted on a pro rata basis, increasing the monthly amount to each such remaining creditor. Ultimately, when all secured and administrative claims were satisfied, distributions would then commence to unsecured creditors.

In 2005 under BAPCPA, Congress amended section 1325(a)(5)(B), adding a new subsection (iii). This new section states that if the property distribution to secured creditors under a Chapter 13 plan is to be in the form of periodic payments, then they must be "in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). In addition, if the collateral in question is personal property, then the payments must also be sufficient to provide adequate protection to the creditor's claim during the term of the plan. 11 U.S.C. § 1325(a)(5)(B)(iii)(II). The trustee's objection in this case raises his concern that under BAPCPA the pro rata distribution mechanism may no longer be permissible– even though, as applied in this case (and in most cases, for that matter), it results in either a level payment or an *increase* in the size of payment with regard to each secured creditor. The question is simply this: does the term "equal" in subsection (iii)(I) require that the payment not be adjusted upward as some creditor claims are satisfied and drop out of the distribution?

A small amount of case law has begun to develop on this new statutory language. A couple of courts have held that the provision clearly bans plans that contemplate a balloon payment at the end. *See In re Lemieux*, 347 B.R. 460, 464 (Bankr. D. Mass. 2006); *In re Wagner*, 342 B.R. 766, 769 (Bankr. E.D. Tenn. 2006).[1] Other courts note, however, that the payment amount need not start on the effective date of the plan, although once the payments *have* started, they must remain equal. *See e.g., In re DeSardi*, 340 B.R. 790, 804-05 (Bankr. S.D. Tex. 2006) ("The Court understands [the

---

[1] The logic is plain: a stream of relatively small payments that ends with a balloon could result in a distribution with a present value equal to the allowed amount of the claim. Under prior law, such a distribution would pass muster under the plain language of the statute. The new statute, by adding the proviso for "equal monthly amounts," puts an end to this tactic.

statute] to require payments to be equal once they begin, and to continue to be equal until they cease"). The Sixth Circuit has noted that new subsection (iii) has *two* subdivisions, the second of which helps to shed light on the first. *In re Nichols*, 440 F.3d 850, 853-54 (6th Cir. 2006). Subdivision (II) requires, at least with regard to creditors whose collateral is personalty, that the payment amount be sufficient to accord the creditor adequate protection of its claim.

Section 1325(a)(5) has long provided that, unless the secured creditor "has accepted the plan" the debtor must either surrender the collateral to the creditor upon confirmation or (if the debtor intends to keep and use the collateral) pay the creditor property having a value equal to the allowed amount of the claim. 11 U.S.C. § 1325(a)(5)(B)(ii). The creditor must be permitted to retain its lien as well. 11 U.S.C. § 1325(a)(5)(B)(i). According to the leading commentator on chapter 13 law and practice,

> Lien retention in § 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal depreciation in the value of collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of present value (interest) after confirmation, lien retention avoids constitutional problems only if periodic payments under the plan equal or exceed the value lost through depreciation and use of collateral by the debtor after confirmation. Put another way, even if the plan recites that secured claim holders retain liens, if the payments proposed by the plan are insufficient to stay ahead of depreciation, the retained liens will erode faster than the allowed secured claim is paid, contrary to the intent of § 1325(a)(5)(B)(i).

KEITH LUNDIN, CHAPTER 13 BANKRUPTCY 104-4 to 104-5 (3rd ed. 2000).

In actuality, the "adequate protection" to which the statute now refers essentially corresponds to the constitutional requirement discussed by Judge Lundin in his treatise. As the Supreme Court has explained, the essence of adequate protection, for bankruptcy purposes, is prevention of diminution in the value of the collateral over the term of the bankruptcy. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988). Thus, any

payment which is sufficient to compensate the creditor for an erosion in collateral value over the term of the plan necessarily satisfies the adequate protection requirements of subdivision (II) of section 1325(a)(5)(B)(iii).

This helps us to answer the question posed here. A debtor could propose a plan calling for *pro rata* distribution to secured creditors and administrative claims. So long as the amount of that distribution can be fairly calculated as of confirmation of the plan, and so long as that amount is then determined to accord the creditor adequate protection of its claim within the meaning of *Timbers*, the distribution amount under a *pro rata* plan will, as a matter of law, correspond to the "equal monthly amount" required under subdivision (I) of section 1325(a)(5)(B)(iii).[2]

In this case, the plan is a "stair step" plan. That is, payments to certain creditors are expected to *increase* when other creditor claims are paid off. Later in the term of the plan, after a rent-to-own contract is satisfied and a loan to the Debtors' pension is repaid, more money will be available for other creditors. Should the trustee then be prohibited from redistributing the newly freed-up portion of the plan payment to other creditors, on grounds that those other creditors would then no longer be receiving "equal monthly payments?" That would surely be an odd outcome. If the initial distribution otherwise satisfies the requirements of section 1325(a)(5)(B), then an *additional* distribution should not be prohibited.

There is an alternative reason why *pro rata* distributions should be permissible. Section 1325(a)(5)(A) still provides, as it always has, that the plan's provision for a secured creditor's claim may be approved by the court regardless whether it satisfies the requisites of subsection (B), so long as the secured creditor "has accepted the plan." Chapter 13 (unlike chapter 11) has no formal

---

[2] The *pro rata* distribution to the secured creditor available as of the effective date of the plan must also satisfy the "present value" analysis in section 1325(a)(5)(B)(ii). That is, that amount, if paid over the life of the plan, must equal the present value of the allowed secured claim. The debtor cannot, under BAPCPA, expect to satisfy the present value test by reliance on a "stair step" plan.

procedure for voting by creditors. The Ninth Circuit has said that

> In most instances, failure to object translates into acceptance of the plan by the secured creditor. *See Matter of Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983) (stating that the creditor's "failure to raise [the] objection at the confirmation hearing . . . should preclude its attack on the plan . . .."); *In re Szostek*, 886 F.2d at 1406 (same); *see also In re Brown*, 108 B.R. at 740 (stating that "[a]s no mechanism for plan acceptance by creditors exists in a chapter 13 case (unlike in a Chapter 11 case where the creditors may vote for plan confirmation), acceptance is implied when an objection is not raised").

*In re Andrews*, 49 F.3d 1404, 1409 (9th Cir. 1995).[3] The rule is the same in the Third Circuit as cited in *Andrews*. *See In re Szostek*, 886 F.2d 1405, 1406 (3rd Cir. 1989); *but cf. In re Montoya*, 341 B.R. 41, 46 (Bankr. D. Utah 2006) (deemed acceptance not permitted to override specific requirement of the "hanging paragraph" to section 1325(a) regarding vehicles purchased within 910 days of filing of the case, citing cases). The rationale for deemed acceptance is straightforward: the statute itself explicitly contemplates acceptance of the plan's provisions as an alternative to two other choices, one involving surrender and the other involving payout in accordance with subparagraph (B). As Congress certainly was aware of how to make provision for specific affirmative acceptance (as it did in chapter 11 with its balloting and solicitation provisions), the fact that Congress thought it unnecessary to craft similar provisions for chapter 13 indicates that Congress did not expect the acceptance described in subparagraph (A) to be memorialized by some document, such as a ballot or other official form.

Following the Ninth and Third Circuits, this court holds that acquiescence constitutes acceptance for purposes of section 1325(a)(5)(A). As no secured creditor objected to this plan's treatment of their claim, they are deemed to have accepted the plan's treatment.

The trustee's objections are therefore overruled and the plan is confirmed.

### # # #

---

[3] Indeed, the Ninth Circuit ruled in *Andrews* that the chapter 13 trustee lacked standing to even raise an objection to confirmation premised on failure to satisfy section 1325(a)(5)(B). *See id.*